# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DORRET FRANCIS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 5:18-cv-00583-SLP |
| | ) | |
| APEX USA, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO STRIKE EXPERT GREG H. BRISTOL'S REBUTTAL REPORT AND TESTIMONY

C. Eric Shephard, OBA No. 22299
A. Wayne Billings, OBA No. 31483
FELLERS, SNIDER, BLANKENSHIP,
BAILEY & TIPPENS, P.C.
100 N. Broadway Ave., Suite 1700
Oklahoma City, OK 73102
Telephone: (405) 232-0621
Facsimile: (405) 239-7659
Email: EShephard@FellersSnider.com
WBillings@FellersSnider.com

***Attorneys for Defendants***

Date: November 2, 2020

## INTRODUCTION

Plaintiffs' Motion to Strike Expert Report and Testimony of Greg H. Bristol [Dkt. 130] ("Motion") should be denied for the following reasons:

1. As Defendants' brief in opposition to class certification demonstrates (*see* Dkt. 132), Mr. Bristol has *not* been offered to simply tell the Court that any element of Rule 23 has been met (unlike Plaintiffs' expert, Mr. deBaca, who does just that). Instead, Mr. Bristol offers practical, real-world expertise as to the *process* by which trafficking determinations are made in the field, which will aid the Court in assessing whether aggregate, class-wide trafficking determinations are possible in this case;

2. Because the fundamental elements of Plaintiffs' claims under 18 U.S.C. § 1589 are identical in both the civil and criminal contexts, Mr. Bristol's lack of experience in civil cases does nothing to discount his extensive expertise in criminal cases dealing with the exact same elements;

3. Mr. Bristol's report (Mot. [Dkt. 130-2] at Ex. 1) and testimony are admissible, because they are "intended solely to contradict or rebut evidence on the same subject matter" identified in Mr. deBaca's report. Fed. R. Civ. P. 26(a)(2)(D)(ii). Thus, Plaintiffs' arguments go to the weight of Mr. Bristol's opinions, not their admissibility.

For those reasons, and as discussed in detail below, Plaintiffs' Motion should be denied, and the Court should proceed to ruling on the merits of class certification.

## FACTUAL BACKGROUND

Plaintiffs retained Mr. deBaca as their purported Rule 23 class certification expert. Ex. 1, deBaca Report, at ¶¶ 35-36. Mr. deBaca admittedly has no professional experience

whatsoever with class action litigation and has *never* testified as an expert in class certification. Ex. 2, deBaca Depo. (Excerpt), at 60:25-61:3, 77:14-21, 133:8-18. Despite this, Mr. deBaca expressly usurps the role of the Court by advancing purely legal arguments, i.e., that each Rule 23 element is satisfied and that the Court should certify the proposed class. Ex. 1, deBaca Report, at ¶¶ 37-44, 79. As Defendants have previously argued (Dkt. 119), *any* expert who goes so far as to tell the Court that Rule 23 has been satisfied is an improper "legal expert." Such "legal experts" usurp the role of the Court, because "[e]ach courtroom [already] comes equipped with a 'legal expert,' called a judge[.]" *Burkhart v. Washington Metro. Area Trans. Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997).

To counter Mr. deBaca's inadmissible and unhelpful legal conclusions, Defendants retained Mr. Bristol solely for purposes of rebuttal. Mot. [Dkt. 130-2] at Ex. 1, at ¶ 1. Mr. Bristol's lengthy career in law enforcement, combined with his specific focus in human trafficking investigations, enables him to offer the Court a practical, on-the-ground perspective on the errors and omissions in Mr. deBaca's opinions. *Id.* at ¶¶ 2, 5-13; *see also id.*, at Appx. A. Clearly, Mr. Bristol was not retained as a Rule 23 class certification expert, and nothing contained in his Rebuttal Report goes so far as to opine as to whether Rule 23 has been satisfied. Instead, Mr. Bristol's opinions and testimony serve the narrowly-tailored purposes of showing that (1) typical "red flags" or "tell-tale" signs of human trafficking are not present in this case; and (2) Plaintiffs' claims are highly individualized and would need to be investigated on a similarly individualized basis.

While the first of these two purposes obviously goes primarily to the merits stage of this case, the second is extremely helpful to the Court at the class certification stage *without* usurping the Court's role. Rather than dictating the entire Rule 23 analysis for the Court (as Mr. deBaca attempts to do), Mr. Bristol's decades of experience enable him to describe the *process* by which a human trafficking investigation must proceed and to offer insights into that process that are highly instructive for purposes of Rule 23. Specifically, Mr. Bristol's experience in the field actually gathering and analyzing human trafficking evidence helps the Court better understand why the claims at issue "cannot be 'lumped' into one catch-all allegation," because "[n]o two cases are exactly alike[.]" Mot. [Dkt. 130-2] at Ex. 1, at ¶¶ 64-65. Unlike Mr. deBaca, Mr. Bristol leaves legal questions such as "commonality" and "typicality" to the Court and instead offers highly practical insights in support of the conclusion that

> [t]he individualized nature of the alleged human trafficking, which involves specifically overriding the unique will of individual victims, is not subject to a determination on a class or group-wide basis in this case, because the experiences and circumstances of each proposed Plaintiff are so uniquely specific to each individual.

*Id.* at ¶ 19. Thus, Mr. Bristol successfully stays within his field of expertise (i.e., trafficking investigations) while still being helpful to the Court in the class certification inquiry (and, eventually, on the merits). As Plaintiffs cannot identify a single basis for excluding Mr. Bristol's testimony, the Motion should be denied in its entirety.

# ARGUMENT AND AUTHORITY

**I.     Mr. Bristol has not been offered as a "class certification" expert.**

First and foremost, the Motion attacks Mr. Bristol by arguing that he "lacks the relevant experience and expertise" to opine on class certification. Mot. [Dkt. 130], at 3. However, this ignores the fact that Defendants have not cited Mr. Bristol's Rebuttal Report or testimony to defeat any particular element of class certification. *See generally* Dkt. 132. He simply has not been offered as a class certification expert. Instead, Mr. Bristol's expert testimony is offered to rebut the substantive human trafficking opinions espoused in Mr. deBaca's report while simultaneously providing insights into the individualized nature of trafficking investigations—insights that will absolutely assist the Court in making its own Rule 23 conclusions. Mot. [Dkt. 130-2] at Ex. 1, at ¶¶ 19, 64-65.

Unlike Mr. deBaca, Mr. Bristol openly admits he is not a class certification expert. He makes no attempt to use his investigative background to profess an expertise in the purely legal question of class certification. Instead, Mr. Bristol applies his background to reach the practical, experience-based conclusion that trafficking and forced-labor claims—especially claims like the ones Plaintiffs have alleged—are highly individualized and unique from one person to the next. From this, the Court can be better equipped to make its class certification decision, because Mr. Bristol will have provided valuable insights into the challenges of the investigative process on highly individualized claims like forced labor or human trafficking. In other words, while Mr. Bristol is not offered as a class certification expert and makes no attempt to act as one, he is still able to provide helpful testimony to aid the Court in deciding the class certification issue. Thus, because

5

Defendants have not offered Mr. Bristol as a "class certification" expert, Plaintiffs' arguments on that issue are wholly irrelevant.

II. **Because the substantive elements for criminal and civil liability under the TVPRA are identical, Mr. Bristol is amply qualified to opine on the TVPRA issues at issue in Plaintiffs' claims.**

The Motion repeatedly asserts that Mr. Bristol's opinions are somehow unreliable because his experience is exclusively in the criminal context, not the civil context. However, this ignores the fact that the civil elements are *identical* to the criminal elements under 18 U.S.C. § 1589. Both claims depend on the same statute. Plaintiffs concede that "most of the elements of a civil and civil violation are the same" (Mot. [Dkt. 130] at 5), but even this concession falls short. Plaintiffs blatantly conceal the fact that 18 U.S.C. § 1595(a) adopts the entirety of § 1589 as the basis for a civil action:

> An individual who is a victim of a violation of this chapter [including § 1589] may bring a civil action against the perpetrator (or *whoever knowingly benefits, financially or by receiving anything of value* from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)[.]

18 U.S.C. § 1595(a) (emphasis added). This obviously means that a civil action under § 1595 necessarily depends upon the same substantive elements as a criminal action under § 1589. Plaintiffs cannot explain how Mr. Bristol's undisputedly extensive experience with the substantive elements of a § 1589 criminal violation somehow leaves him incapable of opining on *the exact same substantive elements* in a § 1589 civil case.

In an attempt to sidestep this reality, Plaintiffs misleadingly rely on the assertion that civil liability can attach to "whoever knowingly benefits, financially or by receiving anything of value" from a substantive violation. Mot. [Dkt. 130] at 5. But in light the

6

language quoted above, Plaintiffs cannot seriously maintain that a criminal violation somehow lacks this element. Indeed, the criminal statute (§ 1589) uses the very language Plaintiffs quote in their Motion:

> Whoever *knowingly benefits, financially or by receiving anything of value*, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in subsection (a), knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means, shall be punished as provided in subsection (d).

18 U.S.C. § 1589(b) (emphasis added). Simply stated, a comparison of § 1589(b) and § 1595(a) leaves no room for the distinction Plaintiffs seek to create. In their desperation to manufacture an attack on Mr. Bristol's unassailable qualifications, Plaintiffs have failed to read the plain language of the very statute on which their whole argument depends.

The Court can easily navigate the differing burdens of proof and differing procedural rules that apply in civil versus criminal actions. Those would not be matters for expert testimony in any circumstance, and Mr. Bristol has not sought to make them part of his opinions. The underlying statutory language is the same, whether arising in a civil or criminal case. Because Mr. Bristol is undisputedly qualified to address the criminal TVPRA elements, he is necessarily also qualified to address the identical civil TVPRA elements.[1]

---

[1] Moreover, even if the underlying statutes were not identical, exclusion would still be improper, because Mr. Bristol's "lack of specialization [in civil cases] does not affect the admissibility of [his] opinion, but only its weight." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001) (internal citation and quotations omitted).

## III. Mr. Bristol's methods are reliable to rebut Mr. deBaca's opinions.

In their final proposition, Plaintiffs offer four interrelated arguments that purport to address the reliability of Mr. Bristol's methods. ***First***, Plaintiffs question the reliability of the "red flags" analysis that formed part of Mr. Bristol's opinions. Mot. [Dkt. 130] at 9-10. ***Second***, Plaintiffs argue that certain "red flags" are present that Mr. Bristol did not address. *Id.* at 11-12. ***Third***, Plaintiffs complain about the extent of the evidence Mr. Bristol reviewed. *Id.* at 12-14. ***Finally***, Plaintiffs take issue with comments Mr. Bristol made regarding the presence or absence of various facts (which Plaintiffs' incorrectly label "credibility" opinions). *Id.* at 14-16. However, as shown below, each of these arguments is plainly insufficient to warrant exclusion of Mr. Bristol's opinions.

### A. Mr. Bristol's analysis of "red flags"—which is a rebuttal of the method used in Mr. deBaca's "trends" analysis—is validly based on Mr. Bristol's extensive experience in human trafficking investigations.

The Motion is quick to dismiss Mr. Bristol's "red flags" analysis as somehow unreliable but fails to explain *why* it is supposedly unreliable. It is telling that Plaintiffs cannot point to any *other* methodology they believe Mr. Bristol should have used instead. With nowhere else to go on this issue, Plaintiffs' attempt to develop this argument amounts to little more than a repetition of the civil-criminal distinction (discussed above) and a half-hearted attack on Mr. Bristol's credentials. However, Mr. Bristol's résumé clearly establishes that he has the necessary credentials to serve as a human trafficking expert. He has investigated over 60 human trafficking cases while employed with the FBI, trained over 1,000 law enforcement officers on how to identify the red flags of human trafficking,

testified at grand jury proceedings used to indict human traffickers, published articles related to human trafficking, and helped develop courses to help various professions spot and investigate human trafficking. Mot. [Dkt. 130-2] at Ex. 1, at ¶¶ 5-13; *id*. at Appx. A. Mr. Bristol is obviously qualified to identify the common signs of human trafficking.

More importantly, Plaintiffs ignore the fact that Mr. Bristol is serving as a *rebuttal* expert. Fed. R. Civ. P. 26(a)(2)(D)(ii) allows rebuttal testimony "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[.]" "Rebuttal evidence is properly admissible when it will explain, repel, counteract or disprove the evidence of the adverse party." *Alexander v. Halliburton Energy Servs., Inc.*, 2015 WL 11233093, at *2 (W.D. Okla. Aug. 31, 2015) (quoting *Crowley v. Chait*, 322 F. Supp. 2d 530, 551 (D.N.J. 2004). Where rebuttal evidence is expert testimony, the *Daubert* analysis is less strenuous, because the proposed evidence is narrowly-tailored to criticize an opposing expert's opinions:

> The task of a rebuttal expert is different from that of an affirmative expert. A rebuttal expert, by nature, criticizes the methodology and/or opinions of another. There is no requirement that a rebuttal expert himself offer a competing analysis; his opinions may properly concern criticizing that presented by another party. . . . Rebuttal experts, therefore, have a less demanding task because they have no burden to produce models or methods of their own; they need only attack those of plaintiffs' expert.

*In re Aluminum Warehousing Antitrust Lit.*, 2020 WL 4218329, at *21 (S.D.N.Y. July 23, 2020) (internal citations and quotations omitted); *see also Henkel v. Wagner*, 2016 WL 1271062, at *12 (S.D.N.Y. Mar. 29, 2016).

This is precisely what Mr. Bristol has done in this case. The Rebuttal Report clearly states in the first paragraph that Mr. Bristol was "asked to provide opinions on the factual

findings, opinions, and conclusions contained in the Named Plaintiffs' expert witness report[.]" Mot. [Dkt. 130-2] at Ex. 1, at ¶ 1. Thus, his goal was not to propound his own independent analysis, but rather to *respond to and refute* the analysis offered by Mr. deBaca. Mr. deBaca identified and relied upon what he called "trends," which he believes indicate the presence of human trafficking in this case. In rebuttal, Mr. Bristol identified what he called "red flags" that he found are *not* present in this case. *Id*. at ¶¶ 24-25, 36-38.[2] He also analyzed many of the precedents on which Mr. deBaca relied and pointed out crucial details in each that are lacking in the present case. *Id.* at ¶ 50. Both of these approaches are perfectly appropriate methodologies for a rebuttal report, because their only purpose is to contradict the corresponding assertions made in an opposing expert's disclosure. *See Pourchot v. Pourchot*, 2008 WL 11338595, at *3 (W.D. Okla. July 8, 2008). Accordingly, Plaintiffs' attacks on the reliability of Mr. Bristol's "red flags" method should be rejected.

### B. Plaintiffs' contention that certain "red flags" are present goes to the weight of Mr. Bristol's opinions, not his methodology.

Plaintiffs next argue that certain "red flags" are present and that Mr. Bristol failed to consider them. Mot. [Dkt. 130] at 11. However, this argument can be summarily rejected, because "any weaknesses in the underpinnings of the opinion go to the weight and not the admissibility of the testimony, and [a party] is free, on cross-examination, to

---

[2] In its truest essence, Plaintiffs' argument appears to be little more than quibbling over the label "trend" versus "red flag." Unable to explain the difference between the two, Plaintiffs are left with the conclusory assertion that an analysis of "trends" is helpful but a rebuttal analysis of "red flags" is not. This is a distinction without a difference.

expose whatever weaknesses it believes exist." *Blocker v. ConocoPhillips Co.*, 2019 WL 9698536, at *3 (W.D. Okla. May 13, 2019) (citing *Compton v. Subaru of Am., Inc.*, 82 F.3d 1513, 1518 (10th Cir. 1996), *overruled on other grounds by Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999); *Cook v. Rockwell Int'l Corp.*, 580 F. Supp. 2d 1071, 1085 (D. Colo. 2006); and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993)). In other words, if Plaintiffs believe a given "red flag" is present and helps prove their substantive claims (which, of course, would implicitly endorse the validity and reliability of the "red flag" analysis), they are free to attempt to establish the necessary factual underpinnings through cross-examination.

    **C.**    **Plaintiffs cannot substantiate their attack on the extent of Mr. Bristol's evidentiary review, which closely mirrored the extent of Mr. deBaca's evidentiary review.**

In reaching his opinion that many of the "red flags" are not present in this case, Mr. Bristol reviewed (a) the Class Action Complaint; (b) affidavits and statements from six (6) unnamed class members; (c) depositions from Plaintiffs Kennedy and Pearce; (d) depositions from Defendants Carolyn and Walt Schumacher; (e) the Named Plaintiffs' employment files, and (f) Mr. deBaca's expert report. Mot. [Dkt. 130-2] at Ex. 1, at Appx. B. Plaintiffs claim Mr. Bristol did not "consider enough documents to determine whether a sufficient number of 'red flags' were raised by the evidence." Mot. [Dkt. 130], at 12.[3]

---

[3] Plaintiffs' argument suggests that they believe Mr. Bristol's analysis to be nothing more than a "count the flags" exercise. Given that nothing of the sort appears in the Rebuttal Report or in Mr. Bristol's testimony, Plaintiffs succeed only in demonstrating their own willful misunderstanding rather than any legitimate challenge to Mr. Bristol's approach.

However, Plaintiffs cannot explain exactly *how* the documents Mr. Bristol reviewed were insufficient to form his rebuttal opinions or *which* documents he did not review that show his overall opinions to be unfounded. Especially given that Mr. Bristol's role is solely to rebut Mr. deBaca's opinions, Plaintiffs offer no explanation of why a comprehensive gathering of documents was necessary. The only specific example Plaintiffs can muster is a strained attempt to treat certain *written* communications regarding employee discipline issues as somehow equivalent to the "verbal abuse" red flag. Mot. [Dkt. 130] at 13. But this single example (in addition to falling well short of the "verbal abuse" Plaintiffs claim it represents) can only affect the weight of Mr. Bristol's opinions, not their admissibility. *Blocker*, 2019 WL 9698536, at *3. In short, Plaintiffs accuse Mr. Bristol of relying on insufficient evidence but cannot explain what evidence is missing or how such evidence would have been relevant.

Moreover, Plaintiffs assert that the materials Mr. Bristol reviewed were insufficient to form his opinions but ignore the fact that *Mr. deBaca relied upon the exact same materials*. Obviously, if the documents Mr. deBaca used are sufficient, then those same documents are plainly sufficient for Mr. Bristol's narrower rebuttal opinions as well. Indeed, in many cases Mr. Bristol reviewed *more* evidence than Mr. deBaca did. For example, apparently relying on nothing but the allegations of the Complaint, Mr. deBaca opines as follows:

> Having been subjected to similar promises, fees/costs, and recantations by the Defendants in the Schumacher's recruiting and placement roles, and laboring in the defendants' Clinton-area enterprises under similar contract substitution, isolation, and coercion, from my review of materials in this

> matter the proposed class representatives appear typical of the members as a whole.

Ex. 1, deBaca Report, at ¶ 41. After reviewing the Complaint *and* the available deposition testimony, Mr. Bristol disagreed, stating that "Named Plaintiffs admitted to different interpretations of working conditions" (Mot. [Dkt. 130-2] at Ex. 1, at ¶ 59) and that "[t]he facts indicate a wide variety of experiences and circumstances experienced by the Named Plaintiffs, making even their respective cases incapable of uniform treatment" (*id.* at ¶ 53). Given that Mr. Bristol obviously reviewed and relied upon *more* evidence than did Mr. deBaca on this point, if Mr. Bristol's evidentiary basis is somehow lacking, then Mr. deBaca's necessarily is as well. This example merely demonstrates that Mr. Bristol's review of the evidence closely tracked the evidence Mr. deBaca reviewed, which is entirely appropriate for a rebuttal analysis. Plaintiffs cannot impugn the evidentiary basis for Mr. Bristol's opinions without impugning Mr. deBaca's opinions in the process.

### D. Unlike Mr. deBaca, Mr. Bristol has not offered any credibility opinions.

Plaintiffs' final tactic is to accuse Mr. Bristol of offering opinions that "rest on his assessment of the credibility of the parties." Mot. [Dkt. 130] at 15. Of course, Plaintiffs cannot point to a single instance in which Mr. Bristol ever used the word "credibility" or anything like it. This is in contrast to Mr. deBaca, who *openly* opined that he had "skepticism" about, did not give "particular weight" to, and even identified "things that go to motive and bias for" the statements and affidavits Defendants have obtained from would-be class members that contradict Plaintiffs' allegations. Ex. 2, deBaca Depo., at 208:5-

210:21. As with Plaintiffs' other arguments, if Plaintiffs believe Mr. Bristol has improperly discounted certain evidence, they are free to explore that through cross-examination.

## CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiffs' Motion in its entirety.

Respectfully submitted,

/s/ *C. Eric Shephard*
C. Eric Shephard, OBA No. 22299
A. Wayne Billings, OBA No. 31483
FELLERS, SNIDER, BLANKENSHIP,
BAILEY & TIPPENS, P.C.
100 N. Broadway Ave., Suite 1700
Oklahoma City, OK 73102
Telephone: (405) 232-0621
Facsimile: (405) 239-7659
Email: EShephard@FellersSnider.com
WBillings@FellersSnider.com

***Attorneys for Defendants***

## CERTIFICATE OF SERVICE

I hereby certify that on November 2, 2020, I filed the attached document with the Clerk of Court. Based on the records currently on file in this case, the Clerk of Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

/s/ *C. Eric Shephard*
C. Eric Shephard

#76981/852844